157 So. 863

## WOOD v. FOSTER.
### 5 Div. 185.

Supreme Court of Alabama.
Nov. 30, 1934.

D. T. Ware and D. R. Boyd, both of Roanoke, for appellant.

Hooton & Hooton, of Roanoke, for appellee.

THOMAS, Justice.

The purpose of the bill was to invoke the jurisdiction of a court of equity under the provisions of the statute (Code, § 6439 et seq.) to establish an ancient and agreed dividing line between coterminous landowners.

The statute has been recently construed and applied in Yauger v. Taylor, 218 Ala. 235, 118 So. 271; Smith et al. v. Cook, 220 Ala. 338, 124 So. 898; Clarke v. Earnest, 224 Ala. 165, 139 So. 223; Camp v. Dunnavent, 215 Ala. 78, 109 So. 362.

It is suggested by appellant that, where the evidence is by depositions and affidavits, not given orally in open court, no presumptions are indulged as to the correctness of the findings of fact on which the decree is rested. Section 10276, subsec. 1, Code; Blair et al. v. Jones et al., 201 Ala. 293, 78 So. 69; Andrews et al. v. Grey, 199 Ala. 152, 74 So. 62; Hodge et al. v. Joy et al., 207 Ala. 198, 92 So. 171; Fies & Sons v. Lowery, 226 Ala. 329, 331, 147 So. 136; Treadaway et al. v. Hamilton, 221 Ala. 479, 129 So. 55. The evidence before the trial court has been carefully examined and so considered.

The declarations of former owners made while in possession of land, as that coterminous owners agreed upon a dividing line, and that as such owners their respective occupancies were with a knowledge of such fact, and that there were tendencies of evidence to the contrary are shown by the record. Smith v. Bachus et al., 195 Ala. 8, 70 So. 261; Treadaway et al. v. Hamilton, supra.

The effect of our recent decisions is that equity has jurisdiction to determine disputed boundary lines; that an agreement of coterminous landowners as to what is the boundary line between their lands, followed by occupancy thereunder and thereto, fixes such agreed line as their boundary, if held thereto by adverse possession of ten years; that such evidence is sufficient to establish the line so agreed upon, recognized, or acted upon, if for the period of the bar of the statute. Clarke v. Earnest, supra. In Baldwin v. Harrelson et al., 225 Ala. 386, 143 So. 558, 559, it is declared as the established rule of our cases dealing with the establishment of disputed boundary lines between coterminous landowners that because the dispute thereof is affected by adverse possession and in fact involves the title to a strip of land in dispute between the undisputed holdings of coterminous landowners "is none the less a boundary controversy and within the statutory powers of the chancery court." And this announcement was on the authority of our aforecited recent decisions.

It is alleged, and the testimony shows, that appellee derived title and was let into possession from one Hendon in 1909 and holds thereunder, and that respondent derived title from the Barretts in 1932. Complainant further alleges that respondent has attempted to advance his possession east of the old agreed turn row or made boundary line onto complainant's lands in violation of his right and the solemn agreement of the former owners establishing that line as their boundary, and that his effort is in hostility to complainant's holding by an open, peaceable, adverse, and uninterrupted possession of his land to the made or agreed line for more than ten years.

The affidavit of respondent states that the deed to him of date of December 29, 1930, was by Mary H. Barrett, Bruce Barrett and R. R. Barrett, the widow and only heirs at law of F. B. Barrett, describing the land as being 7½ acres; that on September 28, 1932, he purchased the land at foreclosure sale of mortgage by R. R. Barrett and wife to Merchants' & Farmers' Bank of date of December 31, 1930, which mortgage employed like descriptive words, and that affiant appellant was informed at such sale that the area was 7½ acres; that his survey thereof showed an area of 6¹¹⁄₁₀₀ acres south of the road and as "bounded by the line that N. W. Foster claims is the line, but there are 7½ acres to the line claimed by affiant." Such is the claim and abstract of title of the appellant.

The affidavit of appellee is to the effect that he owns 7½ acres or more of land in said quarter section south of the road and east of appellant's land; that he purchased it in 1909, and went into the immediate possession, cultivating it; "that since the said respective dates of 1909 and 1912 the complainant has been in possession and control of all the land in said described 40 acres of land that lies South of the Old Road and is East of said Made Line, that affiant is informed that said Made Line was made, agreed upon by one Bud Barrett and one Bloomer Hendon prior to 1909, and that prior to 1909 Bud Barrett owned the land West of said Made Line, and the land East of said Made Line was owned by Bloomer Hendon, and that affiant purchased his said tract of land in 1909 from the said· Bloomer Hendon. There has been no controversy or dispute over this Made Line being the boundary line between these two tracts of land in said SE-¼ of the SE-¼ that lies South of the Old Road since I have purchased and been in the control, possession and occupancy of said tract of land that lies East of said Made Line; the said hereinabove Made Line has been recognized as a boundary line between the two tracts of land in said described 40 acres of land that lie South of said Old Road, before and since the purchase of same by affiant." His evidence tends to support his contention.

There was other evidence of disinterested witnesses tending to show that the made or agreed line sought to be established by appellee, Foster, had so been acquired, held, and cultivated to the line from the east by Foster and his tenants and privies in estate for about twenty years, and that Wood and his grantees had not been in possession of more than the part of the tract that lies west of that line, for said time indicated, until appellant set the stakes across the land to the east of the old turn row or agreed line. Such is the effect or tendency of the evidence for appellee.

The testimony of some of appellant's witnesses was to the effect that the shortage of the tract of land east of the alleged turn row or agreed line was developed by the survey made (by Joe Holder) at the instance of the coterminous owners, Bloomer Hendon and Charlie Smith, "about the year 1904 or 1905"; that this discrepancy was likewise demonstrated in 1918 when Foster conveyed the west side of the lands to F. B. Barrett and a survey of the tract was made by Bob Graham. That is to say, there was a tendency of evidence of a long controversy of a shortage of area by insistence of the parties holding on the west side of the line or turn row, and that there was failure of recognition thereof by those in possession of the land east of the turn row, and that there was possession thereof and thereto by the owner on the east side for the time indicated, and no suit in ejectment or otherwise was maintained to settle this controversy or title.

 There is no estoppel raised by the evidence against Foster's claim and assertion of possession of all the land east of the turn row or made line. His deed to F. B. Barrett of date of December 16, 1918, purporting to convey "67½ acres more or less" (for general authorities, see 3 Devlin on Deeds [3d Ed.] § 1310; Reeves v. Whittle, 170 Ga. 408, 153 S. E. 53, 72 A. L. R. 410; Mosby v. Smith et al., 194 Mo. App. 20, 186 S. W. 49; 41 C. J. 214; Nashville, Chattanooga & St. Louis Ry. v. Proctor, 160 Ala. 450, 49 So. 377; and the analogy of our decisions is contained in McIntosh v. Parker, 82 Ala. 238, 3 So. 19; Pendrey v. Godwin et al., 188 Ala. 565, 66 So.

43; Id., 175 Ala. 405, 57 So. 724; Pettit et al. v. Gibson, 201 Ala. 177, 77 So. 703; Chestang v. Bower et al., 224 Ala. 469, 140 So. 537; Mills v. Jordan, 212 Ala. 81, 101 So. 730), applied to the whole area of which the tract recited to contain 7½ acres was a part. When the whole evidence is looked to, as it must be considered, it is clear that the recited 7½ acres were to and south of the road and were not in a square—the road not running due east and west. Deeds must be construed to carry into effect the intent of the parties. Pendrey v. Godwin et al., supra; Cobbs v. Union Naval Stores Co., 202 Ala. 333, 80 So. 415. Parol evidence identifying land with that described has been held admissible in a proper case of ambiguity. Mills v. Jordan, supra. As to this, the evidence showed that since the date of that deed in 1918, and for more than ten years, Foster's possession of the land in that quarter section was south of the road and east of the turn row or agreed line, not in a square; that his possession was peaceable, open, adverse, and uninterrupted to the time respondent sought to interfere therewith—after September, 1932. And we have indicated that the evidence showed appellant's land was south of the road not in a square, was in the same quarter section, and was west of the alleged turn row.

The court, by its decree, established as the true line that made and agreed upon by and between Bloomer Hendon and Bud Barrett, and definitely indicated that line by the decree as shown by the pleading and the preponderance of the evidence. In the recognized sense of a family settlement, there was such a partition by the ancestor, with his son and son-in-law, of the one tract of land south of the road, and the dividing line so agreed upon between them as established and fixed, and the holding thereto was as the dividing line of the appellee and coterminous landowner to the west for more than ten years. Such agreements have been supported by this court. Betts et al. v. Ward, 196 Ala. 248, 72 So. 110; Wright et al. v. Fannin et al., 219 Ala. 234, 121 So. 528; Burleson v. Mays, 189 Ala. 107, 66 So. 36; Copeland v. Warren, 214 Ala. 150, 107 So. 94.

We hold that the decree of the trial court was in accord with the preponderance of the evidence and the law of the case, and is due to be affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.